1:23 MJ 4165

## AFFIDAVIT

I, Stephen J. Chokshi, with the Cleveland Division of the Drug Enforcement Administration, hereinafter referred to as the DEA, duly sworn do state the following:

## AFFIANT'S BACKGROUND

1. As a Special Agent with the DEA, your Affiant is an investigative law enforcement officer of the United States of America within the meaning of Title 18 U.S.C. § 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

2. I have been a Special Agent of the DEA since February 2010. I have had extensive training in the investigation and prosecution of large-scale illegal drug organizations. During this training, I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, drug packaging, pricing, importation, and trafficking methods. In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in federal drug conspiracy laws, preparing drug affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants. In the past 12 years, I have been responsible for the investigation and prosecution of numerous cases involving large-scale narcotics distribution organizations. I have also assisted in numerous investigations that involved the monitoring and recording of court-authorized Title III interceptions.

3. Based on my training and experience, I am familiar with how controlled substances are cultivated, manufactured, processed, packaged, distributed, sold and used within the framework of drug trafficking and how drug traffickers utilize wire and electronic

communications to facilitate their illegal activities. I have participated in investigations that have employed the interception of wire, oral, and electronic communications authorized by the Federal courts in the Western District of New York, as well as the Southern District of New York. While participating in these investigations, I have reviewed and analyzed recorded conversations and records of drug traffickers and money launderers. Through training and experience, I have learned and become very familiar with the coded language used by drug trafficking organizations to conceal illegal activities from law enforcement. I am familiar with many of the methods and techniques used by narcotics traffickers to launder and legitimize drug proceeds in an effort to avoid law enforcement detection and other government mandated reporting requirements.

4. Additionally, from my participation in these investigations, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings. Based upon my training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking and money laundering activity, I am familiar with the ways in which drug traffickers and money launderers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, and the ways that drug traffickers and money launderers use cellular telephones, digital display paging devices, and calling cards to facilitate their activity. Drug traffickers and money launderers also use numerical codes and code words to conduct their transactions. In my experience, drug traffickers and money launderers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their activities from law enforcement. I am also familiar with the ways in which drug

2

traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of offshore accounts.

5. The information contained in this affidavit is based on my personal observations and investigation, information relayed to me by other law enforcement agents and officers, and through official law enforcement reports. Where that information is not based upon my personal knowledge, I believe it to be truthful and reliable. It is also based upon information gained from interviews with cooperating informants, whose reliability is established separately herein. All subscribers, toll record, contained herein was obtained by court order or subpoena. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS); from Thompson Reuters, a law enforcement credit header database (CLEAR); from the State of Ohio or the National Crime Information Center (NCIC) computers; from TransUnion databases (TLO); or by the Ohio Law Enforcement Gateway database (OHLEG) by members herein described.

6. I have participated in and conducted investigations into activities involving narcotics and other illicit, not-narcotic controlled substances. I am familiar with the methods with which drug traffickers conduct their businesses, including, but not limited to, their methods of importing, and distributing controlled substances, their use of cellular telephones, computers and other electronic devices, their use of businesses, houses, multiple vehicles and other facilities in which controlled substances are stored and meetings are conducted, and their use of numeric codes and code words to conduct their narcotics transactions. I am also familiar with drug traffickers' use of communication devices, and texting applications and programs on such

devices to conduct their businesses, including, but not limited to, transmitting information regarding price, quantity, and transportation of controlled substances.

    7.    Based upon my training and participation in other criminal investigations, I am aware of the following:

    a.    Drug traffickers often have narcotics and available large amounts of U.S. Currency in order to finance their on-going narcotics business and often keep this currency in their possession, either at residences or vehicles associated with them;

    b.    Drug traffickers often maintain books, records, receipts, notes, ledgers, and similar items of their drug activity where the drug traffickers have access to them;

    c.    Drug traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers for their associates in the DTO in their residences and vehicles associated with them;

    d.    Persons involved in drug trafficking often conceal in residences other than primary residences ("stash houses"), large amounts of U.S. Currency, financial instruments, precious metals and gems, jewelry, other items of value, and other proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from engaging in drug trafficking activities;

    e.    Persons involved in drug trafficking often segregate their drug operations by storing large amounts of U.S Currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting,

or spending large sums of money derived from engaging in drug trafficking activities in detached garages and sheds. Often, this is done so that, if law enforcement executes a search or arrest warrant in the immediate living area, no evidence will be found. Also, this is done so that if someone attempts to rob them, their drug trafficking activities will be separate from the living area;

f. When drug traffickers amass large amounts of proceeds from the sale of drugs, they attempt to legitimize these profits through money laundering activities including but not limited to concealing their proceeds in bank accounts belonging to associates, purchasing assets, having associates conduct financial transactions on their behalf;

g. Drug traffickers commonly have in their possession at their residences, vehicles, and/or businesses, firearms and other weapons, including but not limited to handguns, revolvers, rifles, shotguns, and machine guns; which are used to protect and secure a drug trafficker's property, which is particularly vulnerable to theft or robbery;

h. Drug traffickers often maintain records linking them to their trafficking. These records may include records of narcotics sales, debts, shipments, which may be contained in electronic organizers, pagers, cellular telephones, computers and other digital memory storage devices (such as CD-ROMS or flash drives), which identify customers and/or co-conspirators, and photographs of co-conspirators. Even if off-site locations are used to store records, some evidence such as safety deposit keys, records, and receipts and/or documents regarding mini-warehouses, mail and answering machines, etc., will

be present;

i. Evidence of drug trafficking activity is often found in the vehicles of members of DTOs. Because coconspirators often have to drive to meet either with each other or with suppliers or customers, evidence of such activity, including, for example and without limitation, receipts from gas stations, convenience stores, and other records indicating the location of a vehicle at a particular time often are found in the relevant vehicles. Also, drug traffickers often store controlled substances in their vehicles or will have remnants of drug transactions therein;

8. This Affidavit is being submitted for the limited purpose of securing a search warrant for the target premises listed herein. I have not included each and every fact known concerning this investigation; rather I have set forth only those facts believed necessary to establish probable cause to search the requested locations.

## PROPERTY TO BE SEARCHED

9. This Affidavit of Probable Cause outlines the probable cause in support of the search of the **Target Location**. The description of the **Target Location** is as follows:

    a. **Target Location:** 690 Eva Avenue, Akron, Ohio 44306

10. For the reasons set out in this affidavit, there is probable cause to believe that the violations of 21 U.S.C. § § 846 and 841(a)(1) ("Target Offenses") have been committed by SHERMAN THOMAS and, that there is probable cause to believe SHERMAN THOMAS is using the **Target Location** to commit the Target Offenses.

**PROBABLE CAUSE**

11. The DEA is conducting a criminal investigation of the SHERMAN THOMAS Drug Trafficking Organization. On September 28, 2022, members of the DEA executed search warrants at two stash locations attributed to SHERMAN THOMAS. Items seized from these two locations included: Approximately 400 grams of methamphetamine, approximately four kilograms of methamphetamine pills, a handgun, a pill press and several kilograms of multi-colored compression binder. Compression binder is a powder mix of various tableting excipients marketed to be easily combined with active ingredients to press tablets. A punch die is a tool used in the "punching" or pressing of tablets that come in various shapes. Punch dies are generally used in conjunction with a tabulating or encapsulating machine also known as a pill press.

12. On April 5, 2023, a Northern District of Ohio grand jury indicted SHERMAN THOMAS on the following counts: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances 21 USC 846; Possession with Intent to Distribute Methamphetamine 21 USC 841(a)(1) and (b)(1)(A); Using or Maintaining a Drug Premises 21 USC 856(a)(1); Possession of Firearms and Ammunition by Convicted Felon 18 USC 922(g)(1) and 924(a)(2).

13. On April 6, 2023, a federal arrest warrant was issued for SHERMAN THOMAS.

14. On June 5, 2023, at approximately 7:10 AM, members of the United States Marshals Service (USMS) Fugitive Task Force along with members of the DEA arrested THOMAS at the **Target Location** without incident. Also present at the **Target Location** was Ariel Smith and three (3) young children. During a security sweep of the residence, members of

the USMS observed the following items in plain view within the **Target Location**: suspected narcotics press with residue within an enclosed "lab" in the basement, a blender with residue and a digital scale in the second-floor bedroom, another suspected narcotic press and a firearms magazine in the closet of the second floor bedroom.

15. Based on the foregoing facts and circumstances as well as my knowledge of the investigation, I believe THOMAS is utilizing **Target Location** as a stash house of narcotics and narcotics proceeds.

Stephen J. Chokshi
Special Agent
Drug Enforcement Administration

This affidavit was sworn to by the affiant
by telephone after a PDF was transmitted
by email, per Fed. R. Crim. P. 4.1, 41(d)(3),
this 5th day of June 2023.

JONATHAN D. GREENBERG
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF OHIO

